IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH D. STERN,

    Plaintiff,

v.

GLOBUS MEDICAL, INC.,

    Defendant.

Civil Action No. 1:16-cv-91-RGA

MEMORANDUM OPINION

Kenneth L. Dorsney, Esq., MORRIS JAMES LLP, Wilmington, DE; Joel A. Kauth, Esq. (argued), KPPB LLP, Anaheim, CA; Mark Y. Yeh, Esq., KPPB LLP, Anaheim, CA.

    Attorneys for Plaintiff

Adam W. Poff, Esq., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Robert M. Vrana, Esq., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; George D. Moustakas, Esq. (argued), HARNESS, DICKEY & PIERCE, P.L.C., Troy, MI.

    Attorneys for Defendant

August 24, 2017

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent Nos. 8,556,895 ("the '895 Patent") and 8,858,556 ("the '556 Patent). The Court has considered the Parties' Joint Claim Construction Brief. (D.I. 52). The Court heard oral argument on August 9, 2017. (D.I. 55) ("Hr'g Tr.").

## I. BACKGROUND

Plaintiff filed this action on February 17, 2016, alleging infringement of three patents. (D.I. 1). On March 27, 2017, Plaintiff stipulated to dismissal of one of these patents, leaving the '895 and '556 patents remaining in suit. (D.I. 40). These two remaining patents share a common specification and claim cervical plating systems and methods of cervical fusion using these systems.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction

analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per*

*Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

### A. The Patents-In-Suit

The '895 patent is directed to cervical plating systems and methods of cervical fusion using those systems. Claim 1 is representative and reads as follows:

> 1. An anterior cervical plating system comprising:
> at least one pre-positioned cervical plate defining a cervical plate body having a lower horizontal face configured to be disposed adjacent a first vertebral body and an upper horizontal face opposite said fewer horizontal face, and having at least a first vertebral anchoring mechanism configured to attach to the first vertebral body and at least one *interlocking portion* arranged on the cervical plate body *along* a longitudinal axis thereof;
> at least one *revision cervical plate* defining a revision plate body having at least a second vertebral anchoring mechanism configured to attach to a second vertebral body and at least one armature extending from the revision plate body *along* a longitudinal axis thereof, the at least one armature having a *cooperative interlocking portion* disposed thereon;
> wherein the at least one *cooperative interlocking portion* of the revision plate is configured to cooperatively *engage* the at least one *interlocking portion* of the pre-positioned cervical plate to provide a *stabilizing interconnection* between adjacent pre-positioned cervical plate and the *revision cervical plates*, the *stabilizing interconnection* being capable of resisting movement of the adjacent cervical plates in at least one dimension;
> wherein the *cooperative interlocking portion* of the *revision cervical plate* is configured such that it initially *engages* the interlocking portion of the pre-positioned cervical plate from above the upper horizontal face of the pre-positioned cervical plate;
> wherein no threaded connector is inserted through or between any portion of the at least one armature in forming and permanently securing the *stabilizing interconnection* between the *interlocking portion* of the pre-positioned cervical plate and the *cooperative interlocking portion* of the revision plate; and
> wherein the *cooperative interlocking portion* of the revision plate does not directly anchor into the first vertebral body or the second vertebral body when the *stabilizing interconnection* is made.

3

('895 patent, claim 1) (disputed terms italicized). Certain disputed terms appear only in dependent claims. Claims 3, 5, and 17 of the '895 patent are representative of these dependent claims and read as follows:

> 3. The system of claim 1, wherein the *interlocking portion* the of pre-positioned cervical plate comprises a *groove* integrally formed into at least one of the distal and proximal ends of the body of the cervical plate, and wherein the armature of the revision plate is interlockingly cooperative with said *groove*.
>
> 5. The system of claim 3, wherein the *groove* is slotted, and the armature has a cooperatively interlocking *latch* integrally formed on a portion thereof.
>
> 17. The system of claim 1, wherein each of the at least one pre-positioned cervical plate and at least one *revision cervical plate* further comprise an opening formed in the body of the plate disposed such that said opening *overlaps* and allows visual inspection of the disc space between two adjacent vertebra when said cervical plates are anchored in position.

('895 patent, claims 3, 5, 17) (disputed terms italicized).

The '556 patent is also directed to cervical plating systems and methods of cervical fusion using those systems. Claim 1 is representative and reads as follows:

> 1. An anterior cervical plating system comprising:
> at least one pre-positioned cervical plate having upper and lower horizontal faces, wherein at least a portion of the lower horizontal face is configured to be disposed adjacent a first vertebral body, at least a first vertebral anchoring mechanism configured to attach to the first vertebral body, and at least one *interlocking portion* arranged on the pre-positioned cervical plate;
> at least one *revision cervical plate* defining a revision plate body having upper and lower horizontal faces, wherein at least a portion of the lower horizontal face is configured to be disposed adjacent a second vertebral body, at least a second vertebral anchoring mechanism configured to attach to the second vertebral body, and at least one armature extending from the revision plate, the at least one armature having a *cooperative interlocking portion* disposed thereon;
> wherein the at least one *cooperative interlocking portion* of the *revision cervical plate* is configured to cooperatively *engage* the at least one *interlocking portion* of the pre-positioned plate to provide a *stabilizing interconnection* between the pre-positioned and *revision cervical plates*, the *stabilizing interconnection* being capable of resisting movement of the pre-positioned and *revision cervical plates*; and
> wherein the *engagement* between the pre-positioned and *revision cervical plates* is initially formed by positioning the at least one armature of the *revision*

4

*cervical plate* above the upper horizontal face of the pre-positioned cervical plate and moving at least a portion of the revision plate in the direction of the second vertebral body, and wherein the *cooperative interlocking portion* of the *revision cervical plate* is configured such that when *engaged* to the *interlocking portion* of the pre-positioned cervical plate a portion of the at least one armature is positioned atop a portion of the upper horizontal face of the pre-positioned cervical plate; and

wherein no threaded connector passes through the portion of the at least one armature positioned atop a portion of the upper horizontal face of the pre-positioned cervical plate.

('556 patent, claim 1) (disputed terms italicized).

## B. Disputed Terms

1. "interlocking portion"/"cooperative interlocking portion"

   a. *Plaintiff's proposed construction*: "a part of a [revision] cervical plate that connects to a mating part of another plate, such as the cooperative interlocking portion of a revision plate"

   b. *Defendant's proposed construction*: "plain and ordinary meaning; alternatively: a part of a [revision] cervical plate that locks to a mating part of another plate"

   c. *Court's construction*: "part of a [revision] cervical plate that securely fixes to a mating part of another plate"

It is clear from the claims, and the parties agree, that the "interlocking portion" is a part of the base cervical plate while the "cooperative interlocking portion" is part of a revision cervical plate. (Hr'g Tr. 5:2-7, 11:2-7). The parties' only material dispute as to both of these terms is whether the "interlocking portions" of two cervical plates must lock together, as Defendant contends, or whether there must merely connect together, as Plaintiff insists. (D.I. 52 at 13, 15). As I stated at oral argument, I think "connect" is too broad, so I will reject that portion of Plaintiff's construction. (Hr'g Tr. 9:3-5).

The specification describes the "linkage system," which is composed of "linkages and coordinating surfaces," as "allow[ing] a new plate to be securely fixed to a preexisting plate." ('895 patent at 5:38-46). At oral argument, Plaintiff stated it would agree to substitute "securely

5

fixes" for "connects." (Hr'g Tr. 27:2-6). Defendant objects to "securely fixes" as not being limiting enough. (Hr'g Tr. 26:4-14).

Defendant insists that the concept of "locking" must be included in the construction of this term. (Hr'g Tr. 26:17-19). Plaintiff's concern about using the word "lock" is that a jury might conclude that the "interlocking portion" would prevent movement in all directions, which Plaintiff contends unduly limits the construction. (D.I. 52 at 15). As Plaintiff notes, the claims specify that "the stabilizing interconnection [is] capable of resisting movement of the adjacent cervical plates in at least one dimension." ('895 patent claim 1). I agree with Plaintiff that Defendant is reading too much into the word "interlocking." The claims describe sufficiently what the "interlocking portion" of the plate must do (i.e., resist movement in at least one dimension) such that I think a jury will be able to understand what "securely fixes" means in the context of the claims. I will construe this term to mean "part of a [revision] cervical plate that securely fixes to a mating part of another plate."

2.    "stabilizing interconnection"

     a.    *Plaintiff's proposed construction*: "connection between two cervical plates that reduces movement of either plate"

     b.    *Defendant's proposed construction*: "plain and ordinary meaning"

     c.    *Court's construction*: "plain and ordinary meaning"

At oral argument, Plaintiff agreed to construe this term to have its plain and ordinary meaning. (Hr'g Tr. 31:12-13). Therefore, this is the construction I will adopt.

3.    "engage"

     a.    *Plaintiff's proposed construction*: "to connect"

     b.    *Defendant's proposed construction*: "plain and ordinary meaning; alternatively: to interlock or cause to interlock"

6

c.  *Court's construction*: "no construction necessary"

In briefing, Plaintiff argued that this term has its "common meaning," which Plaintiff understands to be "to connect." (D.I. 52 at 28). Plaintiff objects to the use of the word "interlock" in Defendant's alternative proposed construction because Plaintiff contends that the plates, while "securely fixed" together, are not "permanently locked together." (*Id.* at 30). After hearing the parties' arguments on this term, I stated that "I don't really think the jury will have trouble figuring out whether a particular way the base plates and revised plates work with each other, whether they are engaging or not engaging." (Hr'g Tr. 36:2-5). I am not persuaded that this term needs to be construed. There is sufficient context in the claims and in the specification that I do not think a jury will have any difficulty understanding whether two plates are "engaged." Therefore, I find no construction is necessary for this term. The parties are prohibited from arguing that the term means either "to connect" or "to interlock."

4. "along"

   a. *Plaintiff's proposed construction*: "located on or over"

   b. *Defendant's proposed construction*: "on a line or course parallel and close to"

   c. *Court's construction*: "on a line or course parallel and close to"

As used in the claims, this term appears in the phrase "along a longitudinal axis." The only dispute between the parties as to this term is whether the plate must be directly over the vertebral body or merely close to, and parallel to, the vertebral body. (Hr'g Tr. 45:2-10). In other words, the parties dispute whether the armature or interlocking portion must be centered on the plate, as Plaintiff contends it must. (Hr'g Tr. 51:8-52:4). I agree with Defendant. There is nothing in the claims or specification that limits the phrase "along a longitudinal axis" to mean "along a central longitudinal axis," which is essentially what Plaintiff is proposing. As Defendant pointed out

7

during oral argument, at least one embodiment disclosed in the patent has an interlocking portion that is comprised of two arms that are parallel to a longitudinal axis but not centered on the plate. (Hr'g Tr. 52:13-22;'895 patent, Fig. 25). I will adopt Defendant's proposed construction.

5. "groove"

   a. *Plaintiff's proposed construction*: "an elongated channel or depression"

   b. *Defendant's proposed construction*: "plain and ordinary meaning"

   c. *Court's construction*: "no construction necessary"

During oral argument, it became clear that the only reason Plaintiff wishes to construe this term is to head off one of Defendant's invalidity contentions. (Hr'g Tr. 55:1-6, 65:4-8). Despite Defendant's best efforts to convince me that a screw hole can be considered a groove, I am not persuaded that a jury will have difficulty understanding what a groove is in the context of the asserted claims, and I am confident the jury will agree that a screw hole is not a groove. (Hr'g Tr. 61:12-65:16). I find no construction is necessary for this term.

6. "overlap"

   a. *Plaintiff's proposed construction*: "to extend over or past and cover a part of"

   b. *Defendants' proposed construction*: "to lie or extend over and cover part of"

   c. *Court's construction*: "to extend over or past and cover a part of"

The only material dispute as to this term is Defendant's proposed inclusion of "to lie." Defendant agrees that two parts can "overlap" if one extends past the piece with which it is overlapping, and Defendant contends that its construction actually includes this concept, so it seems Defendant has no real objection to this portion of Plaintiff's construction. (Hr'g Tr. 67:10-23). Rather, Defendant objects that Plaintiff's construction excludes the concept of "lying over," which I understand to mean that the plates must touch. (Hr'g Tr. 69:14-70:10). As Plaintiff noted

8

at oral argument, however, this term is used in two contexts in the claims. (Hr'g Tr. 70:19-71:3). In one context, it is a window, or opening in the plate that "allows visual inspection of the disc space," so there is no contact with anything at all. (Hr'g Tr. 70:19-23; '895 patent, claim 17). I agree with Plaintiff. I see no need to add this additional limitation to the construction as I think the claims provide sufficient context that a jury will have no trouble figuring out what overlap means and whether the two overlapping objects must "lie over" each other. I will adopt Plaintiff's proposed construction.

7. "revision cervical plate"

   a. *Plaintiff's proposed construction*: "a cervical plate with specialized features for connecting to another cervical plate"

   b. *Defendant's proposed construction*: "plain and ordinary meaning"

   c. *Court's construction*: "no construction necessary"

As discussed at oral argument, I do not think this term needs to be construed. (Hr'g Tr. 71:21-72:6). The "revision cervical plate" is one component of the invention and I do not think this term has a plain and ordinary meaning to a person of skill in the art. It seems to me that Plaintiff's proposal adds nothing meaningful to a jury's understanding of the term and merely introduces the vague descriptor "specialized features," a phrase I think is so non-specific that it would be particularly unhelpful to a jury. I think that the meaning of the term is sufficiently clear from the claims themselves without any further construction. Therefore, I find that no construction is necessary for this term.

8. "latch"

   a. *Plaintiff's proposed construction*: "a protruding part"

   b. *Defendant's proposed construction*: "plain and ordinary meaning"

   c. *Court's construction*: "decline to construe"

9

This term appears in some asserted claims, but it does not appear in the specification. (Hr'g Tr. 74:7-14). As with many of the other disputed terms, I am not convinced that this term needs to be construed. I think that Plaintiff's proposed construction is so overbroad as to encompass many things that would not be a "latch." Plaintiff admitted at oral argument that its proposal is not consistent with any dictionary definition of "latch." (Hr'g Tr. 74:15-22). At oral argument, I suggested that the plain and ordinary meaning of "latch" is "fastener." (Hr'g Tr. 74:23-75:3). Plaintiff objected on the basis that the "latch" described in the patent is only half of the fastener. (Hr'g Tr. 75:4-5). According to Plaintiff, "There is the latch on the arm part, and there's something that receives the latch on the base part." (Hr'g Tr. 75:5-6). I agree with Plaintiff that the "latch" is only half of the fastener. I do not agree that this means the term should be construed to mean "a protruding part," however. As I see no support in the patent for such a broad construction, I will reject Plaintiff's proposal. In the absence of a better proposal for the plain and ordinary meaning of this term, I decline to construe it at this time.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.